IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Samantha L. Coleman, | ) | C.A. No. 8:15-2466-HMH-KFM |
| | ) | |
| Plaintiff, | ) | **OPINION & ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Schneider Electric USA, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Samantha L. Coleman ("Coleman") alleges race discrimination and retaliation claims against her employer, Schneider Electric USA, Inc. ("Schneider Electric") under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et seq., and the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d). Schneider Electric filed a motion for summary judgment on July 13, 2017. (Mot. Summ. J., ECF No. 70.) Magistrate Judge McDonald recommends granting Schneider Electric's motion for summary judgment. (R&R, ECF No. 78.) After review, the court adopts the magistrate judge's Report and Recommendation and grants Schneider Electric's motion for summary judgment.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1) (2006).

1

# I. FACTUAL AND PROCEDURAL HISTORY

Coleman, an African American female, was hired by Schneider Electric as an electrical drafter in its Switchboard Order Engineering Group in September 1992 at its manufacturing facility in Seneca, South Carolina. (Mot. Summ. J. Attach. 3 (Pl. Dep. 18), ECF No. 70-3.) In June 1995, Coleman was promoted to Application Engineer in the Switchboard Order Engineering Group. (Id. Attach. 3 (Pl. Dep. 19-21), ECF No. 70-3.) In 1999, Schneider Electric transferred its switchboard production to its Columbia, South Carolina facility and moved its enclosed drives production from Columbia to its Seneca facility. (Id. Attach. 3 (Pl. Dep. 22), ECF No. 70-3.) Coleman remained at the Seneca facility and was transferred to the Enclosed Drives Group. (Id. Attach. 3 (Pl. Dep. 22-24), ECF No. 70-3.) Ammon L. "Lanny" Sullivan, Jr. ("Sullivan"), the Order Engineering Supervisor over the Enclosed Drives Group at the time, relocated to the Seneca facility and became Coleman's supervisor. (Id. Attach. 3 (Pl. Dep. 22-24), ECF No. 70-3.)

In 2002, Sullivan assigned Coleman as the coordinator for engineering training. (Mot. Summ. J. Attach. 3 (Pl. Dep. 25-26), ECF No. 70-3.) Coleman did not obtain a promotion or receive any additional pay in connection with this assignment. (Id. Attach. 3 (Pl. Dep. 25-29), ECF No. 70-3.) In 2006, Coleman was promoted to Senior Application Engineer. (Id. Attach. 3 (Pl. Dep. 26-27), ECF No. 70-3.) Coleman's annual performance reviews were consistently well above average. (Id. Attach. 5 (Stokes Dep. Exs. 3, 5, 7, 10), ECF No. 70-5.) Salary increases were, in significant part, dependent upon these annual performance reviews. (Id. Attach. 5 (Stokes Dep. 45-48), ECF No. 70-5.)

Sullivan retired on July 1, 2012, and Schneider Electric elected not to fill his position. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶¶ 18-19), ECF No. 73-1.) Sullivan's duties and responsibilities were delegated among the members of the Enclosed Drives Group. (Id. Attach. 1 (Coleman Aff. ¶ 19), ECF No. 73-1.) Coleman was designated the Administrative Lead in Enclosed Drives. (Mot. Summ. J. Attach. 5 (Stokes Dep. 144), ECF No. 70-5.) According to Ted Stokes ("Stokes"), the Enclosed Drives Manager, Coleman's salary increase in July 2012, reflected the new duties she was assigned as Administrative Lead. (Id. Attach. 5 (Stokes Dep. 48), ECF No. 70-5.) However, Coleman's 2012 Individual Salary Statement does not indicate that the increase was related to the additional duties and Coleman was never informed that her annual salary increase was compensation for these additional duties. (Id. Attach. 5 (Stokes Dep. Ex. 4 (2012 Individual Salary Statement), ECF No. 70-5.)

Schneider Electric has an internal recruiting department that is responsible for coordinating and handling the process of filling vacant positions. (Id. Attach. 6 (Burke Dep. 23-24), ECF No. 70-6.) Schneider Electric employees can apply for vacant positions online. (Id. Attach. 6 (Burke Dep. 115-16), ECF No. 70-6.) On February 5, 2014, Coleman submitted an application for Schneider Electric's Customer Service Supervisor position. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶ 20), ECF No. 73-1.) While Schneider Electric's recruiting department was searching for a candidate to fill the position, Ken Hooker ("Hooker"), the hiring manager, requested that Jeff Marcengill ("Marcengill"), Technical Assistant Group ("TAG") Supervisor in Hooker's department, assume the duties of the Customer Service Supervisor position on an interim basis. (Mot. Summ. J. Attach. 3 (Pl. Dep. 101), ECF No. 70-3.)

Before any candidates were formally interviewed for the position, the Seneca Plant Manager, Larry Smith ("Smith"), received a directive to reduce base costs at the facility. (Id. Attach. 8 (Hooker Dep. 44), ECF No. 70-8.) Hooker suggested to Smith that he could achieve a cost reduction in his department by not filling the Customer Service Supervisor position and having Marcengill assume those duties on a permanent basis. (Id. Attach. 8 (Hooker Dep. 45-46), ECF No. 70-8.) Smith discussed Hooker's proposal with Jamie McDonald ("McDonald"), Vice President responsible for overseeing Schneider Electric's plants, and agreed that the Customer Service Supervisor position would not be filled, and the duties would be permanently assigned to Marcengill. (Id. Attach. 8 (Hooker Dep. 48-49), ECF No. 70-8.) Accordingly, Schneider Electric consolidated the Customer Service and TAG Supervisor positions, and Marcengill assumed the Customer Service Supervisor duties on a permanent basis. (Id. Attach. 8 (Hooker Dep. 48-50), ECF No. 70-8.) Marcengill did not receive a pay raise as a result of this consolidation. (Mot. Summ. J. Attach. 8 (Hooker Dep. 50), ECF No. 70-8.)

Hooker and Jeff Brown ("Brown"), the Senior Human Resources Representative, met with Coleman and advised her that she was not going to be interviewed for the Customer Service Supervisor position because it was being consolidated with the position of TAG Supervisor. (Id. Attach. 3 (Pl. Dep. 100-01), ECF No. 70-3.) Schneider Electric's Customer Service Supervisor requisition history, Requisition 000U2L, provides that the requisition was cancelled on March 5, 2014: "Requisition cancelled: Req cancelled as internal promotion to strategize and reduce base costs." (Resp. Opp'n Mot. Summ. J. Attach. 4 (Requisition History), ECF No. 73-4.)

Marcengill does not have a four-year college degree. (Mot. Summ. J. Attach. 8 (Hooker Dep. 49), ECF No. 70-8.) Coleman holds a Bachelor of Science in Electrical Engineering Technology. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶ 3), ECF No. 73-1.) At the time that Marcengill assumed the Customer Service Supervisor duties, Schneider Electric had a requirement that an employee have a four-year degree in order to become a supervisor. (Mot. Summ. J. Attach. 7 (Brown Dep. 54), ECF No. 70-7.) However, employees with the title of supervisor were grandfathered in regardless of whether they had a four-year degree. (Id. Attach. 7 (Brown Dep. 54), ECF No. 70-7.)

On February 7, 2014, Coleman submitted an application for the position of LVMCC Assembly/Fabrication Manager. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶ 24), ECF No. 73-1.) Three other candidates from the Seneca facility applied for the position, and Schneider Electric received two hundred applications from outside candidates. (Mot. Summ. J. Attach. 7 (Brown Dep. 39), ECF No. 70-7.) According to Schneider Electric, after reviewing the candidates' resumes and applications, it determined that none of the candidates, including Coleman, possessed the necessary supervisory or management experience. (Id. Attach. 7 (Brown Dep. Ex. 4), ECF No. 70-7.) Schneider Electric expanded its search and eventually hired Robert Ireton, who had eighteen years of experience as a production and business unit manager and, in his previous role as a manufacturing manager, was responsible for overseeing the entire manufacturing operations of a low volume, highly complex plant. (Id. Attach. 7 (Brown Dep. Ex. 4), ECF No. 70-7.)

In April 2014, Coleman met with Brown, Schneider Electric's Senior Human Resources Representative at the Seneca facility, to discuss her concerns about not being interviewed for the

Customer Service Supervisor and the LVMCC Assembly/Fabrication Manager positions. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶ 27), ECF No. 73-1.) Coleman specifically told Brown that she was subjected to discrimination due to her race and gender, because she met the qualifications for each position, but was not granted an interview for either job. (Id. Attach. 1 (Coleman Aff. ¶ 27), ECF No. 73-1.) Coleman alleges that Brown told her that he did not want to hear her complaints about discrimination and asked her to leave his office. (Id. Attach. 1 (Coleman Aff. ¶ 28), ECF No. 73-1.)

In July 2014, Coleman met with her manager, Stokes, to discuss Schneider Electric's failure to consider her applications for the positions and her claims of racial and gender discrimination. (Id. Attach. 1 (Coleman Aff. ¶ 29), ECF No. 73-1.) Coleman testified that Stokes refused to discuss the employment discrimination issues with her, telling her that she would have to discuss that with the Human Resources Department, and asked her to leave his office. (Id. Attach. 1 (Coleman Aff. ¶ 29), ECF No. 73-1.) On July 30, 2014, Coleman filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been discriminated against on the basis of her race and gender. (Mot. Summ. J. Attach. 3 (Coleman Dep. Ex. 23 (EEOC Charge of Discrimination)), ECF No. 70-3.) Specifically, Coleman alleged that she was unlawfully denied promotions to the positions of Customer Service Supervisor and LVMCC Assembly/Fabrication Manager, and that Schneider Electric was paying her less than Sullivan despite the fact that she was performing the same job duties. (Id. Attach. 3 (Coleman Dep. Ex. 23 (EEOC Charge of Discrimination)), ECF No. 70-3.)

In October 2014, Coleman submitted her application for the position of Technical Trainer Application Engineer ("Trainer position"), which was a vacant position at Schneider

Electric's Columbia facility. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶ 31), ECF No. 73-1.) Coleman alleges that she met all of the requirements for the Trainer position. (Id. Attach. 1 (Coleman Aff. ¶ 34), ECF No. 73-1.) Further, Coleman claims that she was particularly well suited for this position because she had years of experience training order engineers in the Enclosed Drives Group in Seneca and had experience with the pertinent products. (Id. Attach. 1 (Coleman Aff. ¶ 34), ECF No. 73-1.) On October 29, 2014, Coleman had an interview that lasted no more than one hour, and she was not given a tour of the Columbia plant. (Id. Attach. 5 (Interview Confirmation), ECF No. 73-5 & Attach. 1 (Coleman Aff. ¶ 35), ECF No. 73-1.)

At the beginning of Coleman's interview, Chris Bready ("Bready"), the hiring manager, informed her that he had already spoken with her manager. (Id. Attach. 1 (Coleman Aff. ¶ 35), ECF No. 73-1.) After the interview, Bready determined that Coleman lacked the communication skills necessary for the Trainer position. (Mot. Summ. J. Attach. 6 (Burke Dep. 54), ECF No. 70-6.) Specifically, Coleman was very nervous during the interview. (Id. Attach. 6 (Burke Dep. 54), ECF No. 70-6.) Schneider Electric produced an email from Bready dated November 5, 2014, referencing Coleman's communication skills. (Id. Attach. 6 (Burke Dep. Exs. 7A-7B), ECF No. 70-6.) The email provides that Coleman's "interpersonal communication (very nervous) does not play well with a training role." (Id. Attach. 6 (Burke Dep. Exs. 7A-7B), ECF No. 70-6.) In August 2015, Schneider Electric hired Pankaj Potdar ("Potdar") for the Trainer position. (Id. Attach. 12 (Potdar Dep. 22-24), ECF No. 70-12.) Potdar did not train anyone during the approximately six months that he served in that position. (Mot. Summ. J. Attach. 12 (Potdar Dep. 28), ECF No. 70-12.) In March 2016, Potdar was

7

demoted to the position of Senior Application Engineer as a result of reduction-in-force at the Columbia facility. (Id. Attach. 6 (Burke Dep. 107-08), ECF No. 70-6.)

In January 2015, Coleman met with Athenia Parks ("Parks"), the Human Resources Manager of the Seneca facility, to discuss her claims of race and gender discrimination, including the denial of promotions and the inequity in pay compared to white male employees. (Resp. Opp'n Mot. Summ J. Attach. 1 (Coleman Aff. ¶ 41), ECF No. 73-1.) Parks testified that she encouraged Coleman to utilize Schneider Electric's Development Plan process to improve her skills and position herself to become a preferred candidate for future promotional opportunities. (Mot. Summ. J. Attach. 14 (Parks Dep. 50-51, 56), ECF No. 70-14.) In addition, Parks provided that she offered to work directly with Coleman on her Development Plan, but despite raising the issue on several occasions, Coleman never followed up with Parks, or submitted a Development Plan. (Id. Attach. 14 (Parks Dep. 56), ECF No. 70-14;) (Id. Attach. 15 (Newsome Dep. 47), ECF No. 70-15.) However, Coleman testified that Parks never encouraged her to utilize the Development Plan process, or offer to work directly with Coleman on her Development Plan. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶¶ 41-42), ECF No. 73-1.)

In February 2016, Coleman received her annual performance review for the calendar year 2015. (Mot. Summ. J. Attach. 5 (Stokes Dep. Ex. 13), ECF No. 70-5.) Coleman received an overall performance rating that was less than above average for the first time during her employment with Schneider Electric. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶ 44), ECF No. 73-1.) Schneider Electric altered its rating scale from five possible categories to four for the 2015 annual performance reviews. (Id. Attach. 1 (Coleman Aff. ¶ 45),

ECF No. 73-1.) However, most of the categories of performance remained unchanged. (Mot. Summ. J. Attach. 5 (Stokes Dep. Ex. 13), ECF No. 70-5.) Stokes gave Coleman an overall rating of "Competent." (Id. Attach. 5 (Stokes Dep. Ex. 13), ECF No. 70-5.) Stokes did not observe or witness any behavior from Coleman that would justify the low rating, but based this rating on what he was told by Human Resources regarding Coleman's behavior in a group meeting. (Id. Attach. 5 (Stokes Dep. 95-96), ECF No. 70-5.) Coleman claims there was no factual basis for this rating and that it was part of Schneider Electric's retaliatory actions against her as a result of filing this lawsuit. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶ 46), ECF No. 73-1.)

Coleman claims that had she received a high rating, she would have received a minimum pay increase of at least 1.8 percent in 2016. (Id. Attach. 1 (Coleman Aff. ¶ 45), ECF No. 73-1.) However, based upon the "Competent" rating, Coleman received a pay increase of 1.3 percent in 2016. (Id. Attach. 1 (Coleman Aff. ¶ 45), ECF No. 73-1.) David Huff, who received a 1.8 percent increase in his base salary, was the only employee in Enclosed Drives who received a larger salary increase than Coleman. (Mot. Summ. J. Attach. 2 (Stokes Aff. ¶ 6), ECF No. 70-2.) Schneider Electric contends that the percentage increase for all employees at the Seneca facility was lower than usual because the amount of available funds allocated to managers to use for salary increases in their respective departments was approximately half of what they typically received. (Id. Attach. 2 (Stokes Aff. ¶ 5), ECF No. 70-2.)

On April 28, 2016, Coleman was called into a meeting with Stokes and a representative from Human Resources. (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶ 49), ECF No. 73-1.) Coleman was presented with a five-page Development Plan that was unlike any plan

she had received from Schneider Electric.  (Id. Attach. 1 (Coleman Aff. ¶ 50), ECF No. 73-1.)  Schneider Electric claims the Development Plan was to assist Coleman in her professional development.  (Mot. Summ. J. Attach. 14 (Parks Dep. 57-58), ECF No. 70-14.)  Coleman contends that the Development Plan placed unreasonable burdens and demands on her time at work and was designed to cause her to fail.  (Resp. Opp'n Mot. Summ. J. Attach. 1 (Coleman Aff. ¶ 52), ECF No. 73-1.)  Parks testified that the purpose of the Development Plan was to focus on giving Coleman opportunities for exposure and experience in leadership roles.  (Mot. Summ. J. Attach. 14 (Parks Dep. 57), ECF No. 70-14.)  According to Parks, due to Coleman's complaints about career advancement, Parks took the initiative to create a Development Plan to help her achieve that goal.  (Id. Attach. 14 (Parks Dep. 34-36), ECF No. 70-14.)

The Development Plan provided that Schneider Electric would hire a communications coach to assist Coleman with her communications skills and afford her the opportunity to work with a mentor.  (Id. Attach. 14 (Parks Dep. Ex. 6 (Development Plan)), ECF No. 70-14.)  In addition, Schneider Electric arranged for Coleman to make presentations to the Seneca Leadership Team in order to develop her presentation skills and offered to provide Coleman with a mock interview to prepare her for future promotional opportunities.  (Id. Attach. 14 (Parks Dep. Ex. 6 (Development Plan)), ECF No. 70-14.)  Further, the Development Plan provided Coleman with the opportunity to work within the Motor Controls Center Group to gain experience with another product line and increase her potential for career advancement.  (Id. Attach. 14 (Parks Dep. 61-62), ECF No. 70-14.)

After receiving the Development Plan, Coleman filed another discrimination charge with the EEOC alleging retaliation.  (Mot. Summ. J. Attach. 17 (Charge of Discrimination), ECF

No. 70-17.)  Coleman filed her complaint in this action on June 18, 2015.  (Compl., ECF No. 1.)
On August 29, 2016, Coleman filed her amended complaint in this action, adding claims for
retaliation.  (Am. Compl., ECF No. 45.)

## II. REPORT AND RECOMMENDATION

First, Magistrate Judge McDonald recommends granting Schneider Electric's motion for summary judgment on the Title VII claims for failure to promote, because Coleman failed to establish the essential elements of a prima facie case of discrimination in connection with her application for the Customer Service Supervisor, LVMCC Assembly/Fabrication Manager, and Trainer positions.  (R&R 18-25, ECF No. 78.)  Specifically, Coleman failed to provide sufficient evidence to establish that she was rejected for the positions under circumstances giving rise to an inference of unlawful discrimination.  (Id., ECF No. 78.)  Second, Magistrate Judge McDonald recommends granting Schneider Electric's motion for summary judgment for pay discrimination under the EPA and Title VII, because Coleman failed to provide sufficient evidence to dispute the legitimate, nondiscriminatory reasons proffered by Schneider Electric, and show that race and/or gender discrimination motivated the pay difference.  (Id. at 25-29, ECF No. 78.)  Third, Magistrate Judge McDonald recommends granting Schneider Electric's motion for summary judgment on the Title VII and EPA retaliation claims because Coleman failed to provide sufficient evidence to establish any causal connection between the protected activity and Schneider Electric's actions, both of which are required elements for a retaliation claim.  (Id. at 29-32, ECF No. 78.)

### III. DISCUSSION OF THE LAW

#### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

#### B. Objections to the Report and Recommendation

Coleman filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is

accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the court finds that many of Coleman's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate her claims. However, the court was able to glean three specific objections. First, Coleman objects to the magistrate judge's finding that Coleman failed to establish a prima facie case of discrimination in connection with her application for the Customer Service Supervisor position, because this position was filled by promotion. (Objs. 1-7, ECF No. 82.) Second, Coleman objects to the magistrate judge's finding that she did not provide sufficient evidence to prove that Schneider Electric's decision not to hire her for the Trainer position was pretext for unlawful discrimination. (Id. at 7-10, ECF No. 82.) Third, Coleman objects to the magistrate judge's finding that she cannot establish a causal connection between her protected activities and the alleged adverse employment actions of Schneider Electric pursuant to her retaliation claims under Title VII and the EPA. (Id. at 10, ECF No. 82.)

The parties agree that Coleman's claims for discriminatory failure to promote are evaluated under the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case of discriminatory failure to promote, a plaintiff must show: (1) she is a member of a protected class; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. Anderson

v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).  After establishing a prima facie case, the burden then shifts to the employer to articulate some "legitimate, nondiscriminatory reason" for the employment decision at issue.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  If Schneider Electric demonstrates a legitimate, nondiscriminatory reason for its decision, Coleman must then show that Schneider Electric's stated reason is mere pretext for unlawful discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).

Coleman contends that the magistrate judge erred in finding that there was no claim for denial of promotion for the Customer Service Supervisor position because no applicants were considered for promotion.  (Objs. 1-2, ECF No. 82.)  Specifically, Coleman argues that the Customer Service Supervisor's requisition history establishes that Marcengill was internally promoted to the position.  (Id., ECF No. 82.)  The requisition history provides:  "Requisition Cancelled: Req cancelled as internal promotion to strategize and reduce base costs."  (Resp. Opp'n Mot. Summ. J. Attach. 4 (Requisition History), ECF No. 73-4.)

Coleman focuses on the "internal promotion" language, however, the full entry establishes that the recruitment for the Customer Service Supervisor position was cancelled to reduce base costs.  Further, no candidates were formally interviewed for the position, and the TAG Supervisor and Customer Service Supervisor positions were consolidated without an increase in pay pursuant to a directive to reduce base costs at the facility.  (Mot. Summ. J. Attach. 8 (Hooker Dep. 44-50), ECF No. 70-8.)

The facts do not raise an inference of race and/or gender discrimination.  The record establishes that the Customer Service Supervisor position was not filled by promotion.  Hooker,

14

the hiring manager for the position, testified that the position was consolidated to reduce base costs. (Id. Attach. 8 (Hooker Dep. 45-46), ECF No. 70-8.) There was no competitive selection to fill the position, the TAG Supervisor and Customer Service Supervisor positions were consolidated to reduce base costs, and Marcengill was not awarded an increase in pay. Therefore, Coleman's failure to promote claim for the Customer Service Supervisor position fails. See e.g., Wilder v. Columbia Fire Dept., C/A No. 3:07-976-CMC-BM, 2008 WL 3010084, at *5 (D.S.C. July 31, 2008) (unpublished) (finding plaintiff's failure to promote claim failed because there was no promotion as no candidates were considered and the position was filled by a lateral transfer when another employee was reassigned to the position with no increase in pay); see also Hackney v. Perry, No. 97-2055, 1998 WL 801490, at *2 (4th Cir. Nov. 18, 1998) (unpublished) (finding that where a lateral transfer resulted in the cancellation of a vacant position, there was no competitive selection to fill the position, and, thus, the plaintiff's application was neither considered, nor rejected within the meaning of McDonnell Douglas Corp., 411 U.S. 792). Based on the foregoing, the court finds that Schneider Electric is entitled to summary judgment on Coleman's claim that Schneider Electric violated Title VII when it failed to promote her to Customer Service Supervisor.

Further, Coleman argues that the magistrate judge erred in finding that she failed to present sufficient evidence upon which a reasonable jury could find that Schneider Electric's proffered explanation for not promoting her to the Trainer position was pretext for race and/or gender discrimination. (Objs. 7-10, ECF No. 82.) Coleman contends that Schneider Electric's explanation of poor communications skills was merely pretext for discrimination, and that Coleman was never seriously considered for the Trainer position. (Id., ECF No. 82.)

Specifically, Coleman stresses that her previous performance reviews, conducted by her former supervisor, provide that she was more qualified for the Trainer position than Potdar. (Id., ECF No. 82.)

However, where hiring decisions are made by different supervisors, the opinion of one individual has no probative value with regard to the motivation of the decision made by the other individual. See Lettieri v. Equant, Inc., 478 F.3d 640, 647-48 (4th Cir. 2007); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) ("We cannot require that different supervisors within the same organization must reach the same conclusion on an employee's qualifications and abilities."). Coleman's former supervisor's opinion as to her prior performance is irrelevant to her subsequent application for the Trainer position in 2014. Bready, the hiring manager for the Trainer position, determined that Coleman's poor communications skills would not work well in a training role. (Mot. Summ. J. Attach. 6 (Burke Dep. 54, Exs. 7A-7B), ECF No. 70-6.) Based on the foregoing, the court finds that Schneider Electric is entitled to summary judgment on Coleman's claim that Schneider violated Title VII when it failed to promote her to the Trainer position.

Lastly, Coleman objects to the magistrate judge's finding that she cannot establish a causal connection between her protected activities and the alleged adverse employment actions of Schneider Electric pursuant to her retaliation claims under Title VII and the EPA. (Objs. 10, ECF No. 82.) To establish a prima facie case for a Title VII retaliation claim, the plaintiff must first present sufficient evidence to establish that: (1) she engaged in protected activity; (2) the defendant took an adverse employment action against her; and (3) a causal connection exists between her protected activity and the alleged adverse action(s). Lettieri, 478 F.3d at 650. If

the plaintiff establishes a prima facie case, the defendant employer then has the burden of producing a legitimate, non-discriminatory reason for its actions, and if the employer does so, the plaintiff must then demonstrate that the defendant's proffered reason for its actions is pretext for retaliation. Id. at 646. To establish an adverse action with respect to a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

The EPA provides that it is unlawful "to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). "Thus, to state a claim for retaliation [under § 215(a)(3)], a plaintiff must plausibly allege that: (1) engagement in [a] protected activity, (2) materially adverse action . . . which . . . might well have dissuaded a reasonable worker from making or supporting a charge of discrimination, and (3) causality." Reardon v. Herring, 191 F. Supp. 3d 529, 549 (E.D. Va. 2016) (citations and internal quotation marks omitted).

Coleman argues that she does not rely on temporal proximity between the filing of this lawsuit and Schneider Electric's issuance of the 2015 annual performance review and the 2016 Development Plan to satisfy the causation element of a prima facie case of retaliation. (Objs. 11, ECF No. 82.) Specifically, Coleman contends that the "extraordinary and inexplicable" actions by Schneider Electric are sufficient to satisfy causation, despite the large

temporal proximity between the events. (Id., ECF No. 82.) This objection is without merit. The Fourth Circuit has noted that "[e]ven a mere ten-week separation between the protected activity and termination 'is sufficiently long so as to weaken significantly the inference of causation between the two events.'" Perry v. Kappos, No. 11-1476, 2012 WL 2130908, at *6 (4th Cir. Jun. 13, 2012) (unpublished) (quoting King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003)). "Where the time between the events is too great to establish causation based solely on temporal proximity, a plaintiff must present 'other relevant evidence . . . to establish causation,' such as 'continuing retaliatory conduct and animus' in the intervening period." Id. (quoting Lettieri, 478 F.3d at 650.)

Coleman fails to present other relevant evidence to establish the causation element. Coleman does not provide any continuing retaliatory conduct and animus during the approximately six-month period between the filing of the lawsuit and the issuance of the 2015 annual performance review. (Resp. Opp'n Mot. Summ. J., generally, ECF No. 73;) (Objs., generally, ECF No. 82.) However, Coleman has no complaint with the rating she received on her 2014 annual performance review that was provided to her in early 2015, after she had filed her two Charges of Discrimination. (Objs. 11-12, ECF No. 82.) Based on the foregoing, the court finds that Schneider Electric is entitled to summary judgment on Coleman's retaliation claims. Therefore, after a thorough review of the magistrate judge's Report and the record in this case, the court adopts Magistrate Judge McDonald's Report and Recommendation.

Therefore, it is

**ORDERED** that Schneider Electric's motion for summary judgment, docket number 70, is granted.

**IT IS SO ORDERED**.

                                                               s/Henry M. Herlong, Jr.
                                                               Senior United States District Judge

Greenville, South Carolina
February 5, 2018

**NOTICE OF RIGHT TO APPEAL**

The Plaintiff is hereby notified that she has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.